1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  2:11-CR-0210 JAM

12                Plaintiff,                 ORDER RE DEFENDANTS' MOTION
                                            TO COMPEL PRODUCTION OF MATERIAL
13        v.                                 THAT WOULD BE HELPFUL TO THE
                                            DEFENSE
14   VERA KUZMENKO, et al.,

15                Defendants.

16

17                              INTRODUCTION

18        On October 29, 2104, this matter came before the undersigned for hearing on defendants'

19   motion for an order compelling the government to produce documents and information in

20   discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure and Brady v. Maryland,

21   373 U.S. 83 (1963).  (Doc. No. 329.)  Assistant United States Attorney Lee Bickley appeared on

22   behalf of the United States.  Attorney Bruce Locke appeared on behalf of defendant Vera

23   Kuzmenko; attorney Scott Tedmon appeared on behalf of defendant Nadia Kuzmenko; attorney

24   Hayes Gable appeared on behalf of defendant Aaron New; attorney John Manning appeared on

25   behalf of defendant Edward Shevtsov and attorney Michael Chastaine appeared on behalf of

26   defendant Peter Kuzmenko.

27   /////

28

                                            1

The defendants are charged in a superseding indictment with wire fraud in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1344, money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii), engaging in prohibited monetary transactions in violation of 18 U.S.C. § 1957, and witness tampering in violation of 18 U.S.C. § 1512(b)(3) along with a criminal forfeiture allegation. (Doc. No. 123.)  On its face, the indictment appears to present a garden variety mortgage fraud case in which it is alleged that the defendants recruited straw-buyers to purchase homes and submitted fraudulent loan applications on behalf of the straw buyers.  Specifically, the loan applications allegedly misrepresented the applicants' income, occupations, assets, citizenship and intent to occupy the homes and were often accompanied by false documentation of the same.  It is also alleged that some of the defendants would make a commission on the straw-buyer purchases and that the loan proceeds would be funneled out of escrow into a shell corporation controlled by the defendants.  The straw-buyers would then default on the loans.

THE DEFENDANTS' DISCOVERY MOTION

I. <u>Background</u>

On January 27, 2014, counsel for defendant Vera Kuzmenko brought a motion to compel production of documents material and helpful to the defense.  (Doc. No. 235.)  Through that motion the defendants sought copies of documents in the possession of the Federal Housing Finance Agency (FHFA) related to a civil action FHFA had brought against Merrill Lynch & Co.[1] in the United States District Court for the Southern Division of New York, Case No. 11-cv-6202.  (<u>Id</u>. at 2-4.)  According to defendant Kuzmenko, in that lawsuit the FHFA alleged that Merrill Lynch and First Franklin committed fraud by issuing and selling mortgage backed securities that they knew, or recklessly failed to know, contained loans that were made based upon false loan applications.  (<u>Id</u>. at 6.)  She asserted that her defense to the pending charges is, at least in part, based upon the contention that none of the alleged misrepresentations in the loan applications at issue were "material" because decision-makers at First Franklin and Merrill Lynch did not care

---

[1]  Merrill Lynch subsequently purchased First Franklin, the financial institution which made many of the loans at issue in this case.  Bank of America subsequently purchased Merrill Lynch.

2

1   whether the information was accurate as long as the representations made in the applications

2   qualified the applicant for the loans to be made.  Accordingly, she sought discovery of the

3   FHFA's forensic review of 2,688 First Franklin loans referred to in the amended complaint filed

4   in the Southern District of New York civil action, the report of Clayton Holdings Inc. to Merrill

5   Lynch which was part of a due diligence audit of the First Franklin loans that Merrill Lynch was

6   acquiring, the depositions of First Franklin employees taken by the FHFA in the government's

7   civil action, and any FHFA expert reports that might be helpful to the defense in this case.  (Id. at

8   7.)[2]

9          On February 25, 2014, defendant Kuzmenko's motion to compel came on for hearing

10  before United States Magistrate Judge Kendall Newman who denied the motion, suggesting that

11  defendant had not demonstrated the materiality of the discovery sought and, in any event, it was

12  not in the possession of the government for purposes of this prosecution.  (Doc. Nos. 245 and 246

13  at 22-23.)

14  II.  Arguments of the Parties

15         On September 24, 2014, counsel for defendant Vera Kuzmenko filed a "renewed motion

16  to compel production of material that would be helpful to the defense."  (Doc. No. 262.)

17  Defendants Peter Kuzmenko, Nadia Kuzmenko, Edward Shetsov and Aaron New joined in that

18  motion.  The motion was subsequently continued for hearing before the undersigned.

19         Although presented as a "renewed" motion, despite its similarities to the earlier discovery

20  request denied by Magistrate Judge Newman, this motion is not a renewal of that motion.  Rather,

21  this time the defendants point to an August 21, 2014 press release from the United States

22  Department of Justice announcing a $16.65 billion settlement with Bank of America.  That civil

23  resolution included settlement of a potential civil action in the United States District Court for the

24  District of New Jersey involving government claims that Merrill Lynch had misrepresented to

25  investors that loans it was securitizing were made to borrowers who were likely and able to repay

26  their debts when Merrill Lynch knew that was not the case based upon the due diligence it had

27  _____

28  [2]  Defendant based her motion to compel upon both Rule 16 of the Federal Rules of Criminal
    Procedure and Brady v. Maryland, 373 U.S. 83 (1963).

1  performed.  (Doc. No. 262, Ex. A.)  Based upon the Department of Justice announcement of that

2  investigation and civil settlement, defense counsel in this criminal case now seeks an order

3  compelling "the government to produce the documents that are referred to in [the Department of

4  Justice press release] and that are in the possession of the United States Attorney's Office for

5  New Jersey that would be extraordinarily helpful to Ms. Kuzmenko's defense." (Doc. No. 262 at

6  1-2.)

7        In support of the pending motion, defense counsel relies on short transcript excerpts of the

8  August 2014 trial in the case of United States v. Charikov, et al., No. 12-cr-0003 LKK (E. D.

9  Cal.).  In those excerpts the trial judge, Senior United States District Judge Lawrence K. Karlton,

10  expressed doubt about the proposition that documents (such as the Clayton report to Merrill

11  Lynch regarding First Franklin loans), in the possession of one United States Attorney's Office

12  were not in the possession of another United States Attorney's Office for purposes of criminal

13  discovery.  (Doc. No. 262 at Exs. C& D.)  Defense counsel also argues that the United States

14  Attorney's Office in New Jersey has obviously developed evidence that Merrill Lynch

15  disregarded its own due diligence and continued to securitize loans that it knew were defective –

16  having been made based on false information submitted on loan applications.  (Doc. No. 262 at 5-

17  6.)  Defense counsel contends that the documents reflecting this evidence are in the possession of

18  the United States Attorney's Office in New Jersey and would be helpful to the defense in this

19  criminal prosecution because they would help prove that the defendants here defrauded neither

20  First Franklin nor Merrill Lynch.  The documents, they contend, would assist the defense in

21  attempting to establish that First Franklin and Merrill Lynch did not care if the loan applications

22  contained truthful information and therefore that any misstatements in those applications

23  attributable to defendants were not material.  (Id. at 5-8.)  Defense counsel contends that the

24  documents they seek produced are discoverable under both Rule 16 and Brady and that it is not

25  reasonable to suggest that they can obtain the documents from third parties rather than from the

26  government.

27        The government opposes the defense motion to compel on various grounds.  First, the

28  government argues that the documents sought are not material because they do not relate to an

4

element of the charged offenses and they are therefore not discoverable under either Rule 16 or Brady. (Doc. No. 270 at 10.) In this regard, the government cites to a number of decisions in which courts have held that reliance by the victim on the alleged misrepresentation is not an element of either mail or wire fraud. (Id. at 5-6.) Rather, the element of materiality is established if the false statement was capable of having affected or influenced the decision maker. (Id.) Second, the government argues that the discovery sought is not material, and therefore not discoverable, because it relates solely to secondary market securitization which is not placed at issue by the allegations of the superseding indictment. Rather, the government asserts, this prosecution is simply about defendants arranging lies to be made on loan applications, not what others did or said later with respect to the securitization of those loans. (Id. at 9-10.) Third, the government contends that production of the discovery sought, involving more than 88.4 million pages turned over to the United States Attorney's Office in New Jersey by third parties, would be unduly burdensome. That is particularly true here, where according to the government, over 64,000 pages of discovery have already been produced to the defense. Fourth, the government argues that documents in the possession of the civil division of the United States Attorney's Office in New Jersey are not "in the possession of" the criminal division of the United States Attorney's Office in this district for purposes of criminal discovery. (Id. at 11-14.) Finally, the government asserts that if the defense truly believes that the documents it seeks are material to the presentation of their defense, they may seek them by way of subpoena issue to third parties, which the defense has not done.

    Below the undersigned will address the issues raised by the defense motion to compel and the seemingly broad discovery that it seeks to have the government compelled to produce.

III. Analysis

    Under Federal Rule of Criminal Procedure 16(a)(1)(E), the government must provide a criminal defendant with discovery of materials "which are within the possession, custody or

/////

/////

/////

5

1 Control of the government, and which are material to the preparation of the defendant's

2 defense."[3]  As the Ninth Circuit has stated:

> Rule 16 permits discovery that is relevant to the development of a possible defense.  United States v. Clegg, 740 F.2d 16, 18 (9th Cir. 1984).  To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.  United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984); United States v. Cadet, 727 F.2d 1453, 1468 (9th Cir. 1984).  **Neither a general description of the information sought nor conclusory allegations of materiality suffice**; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense.  See Little, 753 F.2d at 1445; Cadet, 727 F.2d at 1466-68.

United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990) (emphasis added).  See also United States v. Muniz-Jaquez, 718 F.3d 1180, 1183 (9th Cir. 2013); United States v. Zone, 403 F.3d 1101, 1107 (9th Cir. 2005).

With respect to the defendants' burden of making a prima facie showing of materiality in support of the request for discovery under Rule 16, it has been observed as follows:

> The materiality requirement, however, is not a "heavy burden"; rather, evidence "is material as long as there is a strong indication that . . . the evidence will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'"  United States v. Liquid Sugars, Inc., 158 F.R.D. 466, 471 (E.D. Cal. 1994).  "[R]equests which are designed to generally cast for impeachment material . . . are not material. Such requests are instead simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful."  Id. at 472.

United States v. Bergonzi, 216 F.R.D. 487, 501 (N.D. Cal. 2003).  See also Strickler v. Greene, 527 U.S. 263, 280 (1999) ("[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.")  Nonetheless, where the government has shown that complying with a criminal defendant's discovery request under Rule 16 would be unduly burdensome, "it is incumbent on the district court to consider the government interests asserted in light of the materiality shown."  Mandel,

---

[3]  In light of the analysis set forth below, the court need not address the question of  whether the materials sought in this case are within the possession, custody or control of the government.  But see United States v. Santiago, 46 F.3d 885, 893 (9th Cir.1995); United States v. Safavian, 233 F.R.D. 12, 14 (D.D.C. 2005)

1   914 F.2d at 1219 (citing Cadet, 727 F.2d at 1468). In the absence of the required factual showing

2   from the defense, there is no basis upon which the court to exercise any discretion it has to order

3   discovery. (Id.)

4          On the other hand, under the holding in Brady v. Maryland, 373 U.S. 83, 86 (1963), the

5   prosecution has an obligation to reveal exculpatory evidence, whether substantive or for

6   impeachment purposes, when such evidence is "material" to the defense and in the possession of

7   the government. Again, evidence is "material" to the defense if "there is a reasonable probability

8   that, had the evidence been disclosed to the defense, the result of the proceeding would have been

9   different." United States v. Bagley, 474 U.S. 667, 681 (1985). While the Brady rule is to be

10  interpreted broadly to encourage prosecutors to carry out their duty, the rule has its limitations

11  and does not require the prosecution to divulge every possible shred of evidence that could

12  conceivably benefit the defendant. See, e.g., Moore v. Illinois, 408 U.S. 786, 795(1972) ("We

13  know of no constitutional requirement that the prosecution make a complete and detailed

14  accounting to the defense of all police investigatory work on a case."); Ferrara v. United States,

15  456 F.3d 278, 291 (1st Cir. 2006) ("[D]ue process does not normally require the prosecution

16  either to turn over the whole of its file or to disclose every shred of information that might

17  conceivably affect the defendant's decisionmaking."); Smith v. Secretary, Dept. of Corrections,

18  50 F.3d 801, 823-24 (10th Cir. 1995). In this sense, and because there "is no general

19  constitutional right to discovery in a criminal case[,]" Brady is not an evidentiary rule that grants

20  broad discovery powers to a defendant. Weatherford v. Bursey, 429 U.S. 545, 559 (1977).

21  Therefore, a defendant's mere allegation that the requested information might be material does

22  not entitle the defense to essentially an unsupervised, unlimited search of the government's files.

23  Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987). Against these standards the court will address

24  each of the issues presented by the pending motion.

25         As noted, the defendants in this case are charged with wire and mail fraud. As one district

26  court has summarized in the context of a mortgage fraud prosecution involving straw buyers

27  similar to the scheme alleged in the present indictment:

28  /////

7

The Government must prove a defendant's falsehoods were material in order to sustain a conviction for wire fraud or mail fraud. Neder v. United States, 527 U.S. 1, 25, 119 S. Ct. 1827, 144 L.Ed.2d 35 (1999).  Satisfying the materiality requirement does not require the Government prove actual reliance or damages.  Id. at 24–25.  False statements are material where they have "natural tendency to influence, or [are] capable of influencing" a lender. United States v. Gaudin, 515 U.S. 506, 509, 115 S. Ct. 2310, 132 L.Ed.2d 444 (1995) (quoting Kungys v. United States, 485 U.S. 759, 770, 108 S. Ct. 1537, 99 L.Ed.2d 839 (1988)).  In this context, a court evaluating such a statement employs an objective test looking at "the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end." United States v. Peterson, 538 F.3d 1064, 1072 (9th Cir. 2008) (quoting United States v. Facchini, 832 F.2d 1159, 1162 (9th Cir. 1987)).  For this reason, "it is no defense . . . that the victim of the fraud was negligent, gullible, or incompetent."  United States v. Maximov, No. CR10–822, 2011 WL 4915162, at *2 (D. Ariz. Oct. 17, 2011).  "What matters is whether the misrepresentation had a 'natural tendency to influence the bank or was not capable of influencing the bank.'"  United States v. Haischer, No. 2:11–CR–00267–MMD–CWH, 2012 WL 5288006, at *2 (D. Nev. Oct. 24, 2012) (quoting United States v. Rashid, 383 F.3d 769, 778–79 (8th Cir.2004)).

United States v. Quassani, No. 2:11–CR–00409–LRH, 2013 WL 2476799, at *3 (D. Nev. June 7, 2013).  See also United States v. Jenkins, 633 F.3d 788, 802 n.3 (9th Cir. 2011) ("But a statement is material for wire fraud purposes only if it has the "natural tendency to influence or be capable of influencing [the person to whom] it was addressed." [citation omitted].  There is no requirement that the statements actually influence those to whom they are addressed."); United States v. Blixt, 548 F.3d 882, 888 (9th Cir. 2008) (recognizing that for purposes of the mail fraud statute, the test for materiality "is whether the statement has a natural tendency to influence, or is capable of influencing, the addressee's decision.")

In light of the elements of the charged fraud offenses and the applicable legal standards as set forth above, one district court has observed:

Even if it is assumed for purposes of this Motion that the complaints and orders at issue demonstrate the government's belief that the lenders' practice of disregarding their own loan underwriting criteria was so persuasive that the false statements with which Defendant is charged were irrelevant to the loan approval process, that evidence would bear only on the question whether the lenders actually relied on the false statements rather than on the materiality of the statements.  In other words, the lenders' alleged misconduct regarding their loan underwriting is

8

irrelevant when determining whether Defendant made the alleged false statements with the intent to influence the lenders' decisions. See, e.g., United States v. Reynolds, 189 F.3d 521, 525 (7th Cir.1999) (upholding district court's ruling that the proffered testimony of a banking witness that defendant's loan would have been approved notwithstanding defendant's false statements was inadmissible on the ground that such testimony addressed the bank's reliance on the statements rather than their materiality). The Court, therefore, concludes Defendant has not established the complaints and orders at issue are relevant to the materiality of Defendant's alleged misrepresentations.

United States v. Ovist, No. 3:11–CR–00076–BR, 2012 WL 5830296, at *5 (D. Oregon Nov. 16, 2012).[4]  See also United States v. Sutherland, No. 2:10–CR–0356–LDG-LRL, 2011 WL 4381245 at *4 (D. Nev. Sept. 16, 2011) ("Thus, evidence of the civil suit against MortgageIT is only relevant to materiality if it tends to demonstrate that the misstatements in the loan applications at issue in this case were not "capable of influencing" MortgageIT's decision to accept those applications.")

Here, defendants have simply failed to meet their burden of establishing that the broad discovery which they seek is "material" to their defense under either the Rule 16 or Brady standards set forth above.  Defendants have not provided the court with a strong indication that the discovery they seek will play an important role in uncovering admissible evidence or in formulating their defense at trial.  See Liquid Sugars, Inc., 158 F.R.D. at 471.  Moreover, just as the court in Ovist declined to allow the defense introduction of the government's allegations of misconduct or negligence on the part of financial institutions in defending against mortgage fraud charges, district courts have also denied defense requests for discovery related to the underwriting practices of financial institutions in such cases.  See United States v. Litos, No. 2:12–CR–175,

---

[4]  The defendant in Ovist sought to present a similar defense to that alluded to by defense counsel in this case. There, the FHFA had filed civil actions in state and federal courts in New York against 17 financial institutions that sold faulty subprime mortgage-backed securities.  In those civil actions the government alleged that the financial institutions had failed to disclose the risk associated with the securities and had failed to follow their underwriting guidelines and criteria resulting in a default rate much higher than expected. 2013 WL 5830296, at *1.  The SEC and Federal Reserve subsequently took related enforcement actions against the financial institutions. Id. at *2.  The defendant sought to present the government's own civil complaints and enforcement orders in evidence at his trial on the grounds that they constituted admissions by the government with respect to the lending practices of the financial institutions with which he had dealt.  The defendant's motion was denied.  Id. at *6.

2014 WL 806022 at *4 (N.D. Ind. Feb 24, 2014) (denying a defense discovery motion in a mortgage fraud case seeking evidence that the Bank Of America encouraged loan officers to write loans without concern for the applicant's creditworthiness), aff'd 2014 WL 2216096 (N.D. Ind. May 28, 2014); United States v. Lankford, No. 10–CR–00398 AWI BAM, 2013 WL 2295988, at *1-4 (E.D. Cal. May 24, 2013) (denying mortgage fraud defendant's discovery motion seeking the lenders' underwriting policies, employee commission incentives, marketing strategies for subprime loans, federal investigations of lender victims, lender victim investment strategies, fraud detection reports, and underwriting models and forms).

Notably, here defendants seek discovery not of underwriting practices at the loan origination stage. They seek discovery much further afield. Defendants Kuzmenko seeks discovery of the information developed by the government in pursuing financial institutions civilly for their misconduct at the securitization stage of mortgages. While somewhat related, such civil actions are far different and removed from mortgage fraud prosecutions such as this one. It is one thing to say that financial institutions involved in the securitization of mortgages were aware that 7% (or an even larger percentage) of the loans they were packaging and selling were faulty and at serious risk of default. It is a far, far different thing to suggest both an awareness that a much greater percentage of those loans were faulty and that such an awareness was so widely shared throughout all phases of the mortgage industry that it came to a point that a false statement on a loan application (regarding income, assets, employment, citizenship or intent to occupy) was simply no longer **capable** of influencing a lending decision.[5] Defendants have

---

[5] Some courts presiding over criminal mortgage fraud trials have stated that

> in order to determine the materiality of Defendant's allegedly false statements, the jury must consider whether they had a natural tendency to influence, or were capable of influencing, the decision of the decision-making body to which they were addressed — namely, the financial institutions who were asked to make the loans in this case. See Neder, 527 U.S. at 16. In order to decide whether the false statements had a natural tendency to influence, or were capable of influencing, the decisions of the lenders, the jury must know something about the lenders' decision-making process.

United States v. Maximov, No. CR 10-822-PHX-DGC, 2011 WL 4915162, at *3 (D. Az. Oct. 17, 2011). See also Quassani, 2013 WL 2476799, at *3; United States v. Somee, No. 2:10–CR–

1    presented no evidence of the latter in support of their motion to compel disclosure in this case.

2                                     CONCLUSION

3            For all of the reasons set forth above, IT IS HEREBY ORDERED that defendant Vera

4    Kuzmenko's renewed motion for discovery (Doc. No. 262), joined in by her co-defendants, is

5    denied.

6    Dated:  December 12, 2014

7
                                    _____
8                                   DALE A. DROZD
                                    UNITED STATES MAGISTRATE JUDGE
9    Dad1.crim
     Kuzmenko.11cr0210.discovery
10

11

12

13

14

15

16

17

18

19

20

21

22   _____
     00273–MMD-CWH, 2012 WL 5473153, at *2 (D. Nev. Nov. 9, 2012); United States v. Wanger,
23   No. 2:10–CR–00399–MMD-GWF, 2012 WL 4482403, at *1-2 (D. Nev. Sept. 26, 2012); Ovist,
     2012 WL 5830296, at *7-8.  Whether, and to what extent, a jury must know about the lenders'
24   decision-making process in a mortgage fraud prosecution would appear to be an issue over which
     reasonable minds might disagree. Those courts to have concluded that the jury in such cases must
25   hear evidence on that issue have also concluded that the defendants must be permitted to
     challenge that evidence to rebut the government's proof on the element of materiality, specifically
26   by presenting evidence and arguing that the relevant lending standards did not require the lender
     to consider the allegedly false information.  Id.  Based upon the brief excerpts provided by the
27   defense in support of the pending motion, it appears that this may have been precisely what Judge
     Karlton permitted in the Charikov case.
28

                                           11